NATIONAL LABOR RELATIONS BOARD v. U. S. TRUCK CO., Inc. (EMPLOYEES' MUT. BEN. UNION, Intervenor).

No. 8896.

Circuit Court of Appeals, Sixth Circuit.

Jan. 16, 1942.

George J. Bott, of Kansas City, Mo. (Robert B. Watts, Laurence A. Knapp, Ernest A. Gross, Owsley Vose, and William Strong, all of Washington, D. C., on the brief), for petitioner.

Wilber M. Brucker, of Detroit, Mich. (Arthur P. Boynton, and Clark, Klein, Brucker & Waples, all of Detroit, Mich., on the brief), for respondent.

Francis K. Young, of Detroit, Mich., for intervenor.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented by this record is whether an interstate trucking company may be ordered by the National Labor Relations Board to reinstate with back pay employees found by the Board to have been discharged for union activities when such employees are addicted to the use of alcoholic liquor and have been guilty of repeated violations of known rules of their employer and of the Interstate Commerce Commission forbidding the use of intoxicating liquor when on duty. Respondent contends that such reinstatement violates the spirit and provisions of the Motor Carrier Act, Title 49 U.S.C. § 301 et seq., 49 U.S.C.A. § 301 et seq., and that the National Labor Relations Act must be construed so as to permit obedience by a motor transportation company to the Motor Carrier Act.

The case arises upon petition filed by the Board for enforcement of its order. The Board found that the respondent, in violation of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., had dominated and interfered with the formation and administration of, and had contributed support to the unaffiliated Employees' Mutual Benefit Union, hereinafter called the Benefit Union, and had discriminated against two of its employees by discharging them because of membership in and activities on behalf of an affiliated union. The Board directed the respondent to cease and desist from the unfair labor practices, to cease giving effect to any agreement with the Benefit Union, and to disestablish the Benefit Union as a bargaining representative. It ordered respondent to refund to members the sums deducted from their salaries and paid over to the Benefit Union, to offer reinstatement and back pay to the two employees in question, and to post the usual notices.

■ While the findings of the Board are claimed to be unsupported by substantial evidence, and the long history of non-hostility to unionization shown by respondent is impressive, nevertheless the findings are in general supported by inferences which the Board has the right to draw and which this court has no power to review. National Labor Relations Board v. Link-Belt Co., 311 U. S. 584, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Waterman Steamship Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226.

A new and important question, however, is raised by the order of the Board that the employees Graham and Warrem be reinstated with back pay. The respondent

contended that each of these employees was discharged for intoxication, but each of them testified that upon the occasion of discharge he was censured for joining the union, and the Board therefore held that the discharge violated the Act. With reference to Graham, the Board makes the following finding:

"It is clear that Graham had a long record of violations of these rules. In 1926, during a previous period of employment with the respondent, Graham was discharged for drinking while on duty. He was reinstated in 1931 only after the intercession on his behalf of Behrens and Carl Pratt, the respondent's general superintendent. There is evidence that on approximately 14 occasions Graham had indulged in intoxicating liquor while on duty."

As to Warrem, the Board states:

"There is abundant evidence that during the last 2 years of his employment Warrem indulged in intoxicating liquor during working hours and took frequent leaves of a half day or a day, giving illness as his excuse for these lay-offs."

■ The respondent is engaged in an interstate trucking business and operates between Michigan and Ohio under the Motor Carrier Act, Title 49 U.S.C. § 301 et seq., 49 U.S.C.A. § 301 et seq., a federal statute of equal force with the National Labor Relations Act. Employers who operate in interstate transportation are compelled to obey the mandates of the Motor Carrier Act equally with the mandates of the National Labor Relations Act, and the safety provisions of the former statute are of paramount importance. The respondent cannot operate unless it holds a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing its operation. Under Title 49 U.S.C. § 304 (a) (1), 49 U.S.C.A. § 304 (a) (1), the Commission is charged with the duty to regulate common carriers, by motor vehicle as provided in the Act, and to that end empowered to "establish reasonable requirements with respect to * * * qualifications and maximum hours of service of employees, and safety of operation and equipment." Under § 304 (a) (6), in connection with the obligation to enforce all provisions of the Act, the Commission is given authority "to prescribe rules [and] regulations." Under § 304 (d), the Commission on its own initiative may investigate whether any motor carrier has failed to comply with any provision of the statute or with any requirement established pursuant thereto. Under § 312 the certificate may be suspended, changed or revoked in whole or in part for wilful failure to comply with the statute or with any lawful order, rule or regulation of the Commission promulgated thereunder. In accordance with the statute, the Commission has established regulations governing the qualifications of drivers, which include the following (49 CFR 192.2 et seq.):

"Every motor carrier shall comply with the following regulations * * * and shall instruct his or its employees and agents with respect thereto.

"* * * no motor carrier shall drive, or require or permit to drive, any motor vehicle operated in interstate or foreign commerce, unless the person so driving possesses the following minimum qualifications: * * *

"Shall neither use, nor be under the influence of, any alcoholic liquor or beverage while on duty, nor otherwise make excessive use thereof."

Similar laws and rules are in force both in Michigan and in Ohio. 1 Mich.Comp. Laws 1929, § 4695, 5 Mich.Comp.Laws Supp.1940, §§ 11352-13, 11352-23; General Code of Ohio, §§ 6296-30, 614-8 and 614-116; 33 Ohio Jur., p. 488.

■■ Under the regulations of the Interstate Commerce Commission, 49 CFR 193.3, all motor carriers and their officers, agents, employees and representatives are required to comply with the regulations relating to the driving of vehicles, and every motor carrier must require that its officers, agents, employees and representatives shall become conversant therewith. Section 193.6 provides that no driver shall go on duty while under the influence of nor drink while on duty any alcoholic liquor or beverage nor knowingly be permitted so to do. In compliance with § 193.3, the respondent had promulgated rules applying to all employees, forbidding the use of intoxicating liquor while on duty. The continuing failure to discharge Graham, who was a driver, endangered the public safety, was a violation of the company's rules, the safety regulations, and the State statutes and was cause for revocation of the license to operate. Warrem was the chief body repairman for trucks and trailers. In that position he was responsible for the condition of tailboards or tail gates, doors, and

other parts of the trucks and trailers, the importance of whose condition for public safety is expressly recognized by the safety regulations, 49 CFR 193.10. The public safety required that Warrem also comply with the rules as to use of intoxicating liquor when on duty. Obedience to the express provisions of the regulations and of the state statutes required the dismissal of Graham long before the company acted. Obedience to their spirit also required the dismissal of Warrem. The same considerations require that Graham and Warrem be not reinstated.

This case is far stronger on the facts than Texas Co. v. National Labor Relations Board, 9 Cir., 120 F.2d 186, in which the court on similar grounds refused to enforce reinstatement that had been ordered by the Board. There the Board found that the evidence did not entirely support the denial of the employee discharged that his drunkenness interfered with his duties. Here sweeping conclusions as to violation of the rule against intoxication while on duty are set forth in the Board's own findings. Where the order of the Board as to reinstatement indisputably requires the employer to violate other statutes highly important to the public safety, even though union membership is found by the Board to be the ruling motive for the discharge, this court has authority to vacate the order as violative of public policy and contrary to law.

One further feature of the order remains to be considered. The Board required that amounts deducted from the salaries of members of the Benefit Union and paid into the treasury of the Union be paid by respondent to the employees. This court, in National Labor Relations Board v. West Kentucky Coal Co., 6 Cir., 116 F.2d 816, held that such an order does not fall within the purview of the National Labor Relations Act, nor within the powers of the Board. Here, as there, the checkoff payments were not retained by the employer. They were paid over to the Benefit Union. Here, as there, to affirm the order upon this feature is to order the employer to restore money paid to another.

We bear in mind that the Supreme Court in National Labor Relations Board v. Virginia Electric & Power Co., 62 S.Ct. 344, 86 L.Ed. ——, decided December 22, 1941, expressly pretermitted this question.

We also bear in mind the recent decision of the Supreme Court in National Labor Relations Board v. P. Lorillard Co., 62 S.Ct. 397, 86 L.Ed. ——, announced January 5, 1942. In view of the decisions cited in that case (National Labor Relations Board v. Bradford Dyeing Ass'n, supra; International A. of M. v. National Labor Relations Board, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. Falk Corp., 308 U.S. 453, 458, 459, 60 S.Ct. 307, 84 L.Ed. 396), we conclude that the Supreme Court held that the question there presented was a question of fact upon which this court is bound by the decision of the Board. Here we think that the question presented is one of law. There is no theory of common law or equity under which the employer is liable to pay this sum. The statute contains no provision authorizing the Board to make such an order and the only provision in the statute authorizing money payment by the employer is the provision with reference to back-pay in case of unlawful discharge. It was held in Republic Steel Corp. v. National Labor Relations Board, 311 U.S. 7, 11, 61 S.Ct. 77, 85 L.Ed. 6, that the authority to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because it is engaged in unfair labor practices, even though the Board be of the opinion that the policies of the Act might be effectuated by such an order. The court there reaffirmed its position stated in Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 235, 236, 59 S.Ct. 206, 83 L.Ed. 126, and National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 267, 268, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307, that the Board's power to command affirmative action is remedial and not punitive. We think that the order compelling the employer to restore earnings not retained by it for its own benefit, but turned over to representatives of the employees, is punitive and not corrective. In absence of an express statutory provision requiring the employer to pay dues previously paid by the employees to the company union, of which they are members, and in absence of a specific holding of the Supreme Court upon that point, we conclude that a question of law is involved upon which this court is authorized to rule, and that the Board has erred in this part of the order.

That part of the order of the Board as to reinstatement and payments to Graham and Warrem, and as to refunding to members of the Benefit Union sums deducted from their wages and paid to the Benefit Union is vacated and set aside. In all other respects the petition for enforcement is granted and a decree will issue enforcing the order in accordance with this opinion.