**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PUTNAM TOOL COMPANY, Respondent.**

No. 14395.

United States Court of Appeals Sixth Circuit.

June 2, 1961.

Rosanna A. Blake, N. L. R. B., Washington, D. C., for petitioner, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Vincent W. Bradley, Atty., N. L. R. B., Washington, D. C., on the brief.

Elisha Hanson, Washington, D. C., for respondent, Martin J. Ewald, Detroit, Mich., Emmett E. Tucker, Jr., Washington, D. C., on the brief.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

WEICK, Circuit Judge.

This case is before the Court upon petition of the National Labor Relations Board for the enforcement of its order issued against the respondent company pursuant to Section 10(e) of the National Labor Relations Act, as amended (29 U.S.C.A. § 151 et seq.).

The complaint issued by the Board charged that the respondent violated Section 8(a) (3) and (1) of the Act in that it discharged twelve employees between January 9, 1959 and March 4, 1959 because of their membership in and activi-

ties on behalf of the International Union of Electrical, Radio and Machine Workers, AFL-CIO. At the hearing, the respondent presented no evidence and the Board found that it violated the Act by discharging the twelve employees because of their union activities and membership. The Board issued an order requiring the respondent to cease and desist from these unfair labor practices and to reinstate the discharged employees with back pay and to post the appropriate notices.

The respondent company is located in Detroit, Michigan and at the time of these events employed one hundred thirty-four production and maintenance employees. In early January, 1959, Ernest Provost, one of the later discharged employees, contacted a union representative to ascertain the method to organize the respondent's employees. They arranged a meeting at the Union Hall for the night of January 8, 1959. This meeting was attended by Provost and five other later discharged employees, Lorenzo Julio, Dominic Viviano, Richard Masters, Saverio Franze and Raymond Jerzewski. These six employees signed union cards, were given buttons and union authorization cards for distribution and were formed into the Union Organizing Committee.

The next day, January 9, 1959, four of the employees who had attended the previous night's meeting were discharged. Julio was discharged for washing his hands during working hours although the respondent had no rule against this practice. Viviano, Masters and employee Garrett were laid off because of a lack of orders. Garrett did not attend the organizational meeting but signed a union card at his home after the meeting. David Kendall signed a union card on January 9, 1959. On January 13, 1959, he was given a job which was very complicated. His requests for assistance in doing the job were denied. He was fired the next day for his inability to finish the assigned job. Frank Zombo signed a union card on January 10, 1959 and subsequently distributed union cards to the employees at the plant and at their homes. He was laid off on January 20, 1959 because of a lack of work. He was the only employee laid off that day.

In the cases of Franze and Provost, they had worn union buttons to the plant for the first time on January 20, 1959. On that day, Franze was given a complicated task that he had never worked on before and was fired the next day because of the quality of work he had produced on the new task. Provost was also given a complicated job on a machine with which he had no experience and his requests for assistance were denied by the foreman. He was told if he could not do the work to leave and he was thereupon discharged.

The union filed a representation petition with the Board on February 16, 1959, a copy of which was served upon the respondent on February 18, 1959. By March 4, 1959 there was a discharge of four more union members.

Raymond Templin signed a union card on January 20, 1959. On February 25, 1959, he assisted a fellow employee with his work in the absence of the foreman and was discharged on the next day for this activity. Gus Stavropoulus signed a union card on January 15, 1959. Stavropoulus was a speedy worker and was advised to spread his work throughout the work day. He was given a warning to this effect. He was discharged on February 27, 1959 on the alleged pretext that he spent too much time away from his machine.

William Hanuschock signed a union card on January 9, 1959. He was given a job on a machine that allegedly took two employees with experience to operate. He was fired because the work was not done correctly. Raymond Jerzewski attended the first organizational meeting and was active in it. He was discharged March 4, 1959 because he was not doing enough work although previous to this he was told by a leader foreman that his production had been good.

As of March 15, 1959, forty-three of the respondent's one hundred and thirty-

four employees had joined the union. Twelve of these forty-three had been discharged. The respondent claims that it knew nothing of the union or its activities until January 20, 1959 and that the twelve employees were not discharged because of union activity but for legitimate reasons.

Four of the twelve employees were laid off for the alleged reason that there was a lack of work. The record discloses that between January 1, 1959 and March 1, 1959, the respondent's plant was on an eight hour day. Since March 1, 1959, it has been on a nine hour day. Since April 1, 1959, some or all of the employees worked on Saturdays and overtime.

In 1955, the respondent company had indicated its attitude toward the unionization of its employees when another union attempted to organize the respondent's employees. The respondent sent a letter to its employees three days before the election stating:

> "On April 1, 1955, you'll have the opportunity to decide whether you wish to continue to have the privilege of handling and discussing your own problems, or whether you wish to be represented by an outside agent and forfeit your rights which you have enjoyed during your employment at the Putnam Tool Company."

Admittedly the respondent gave a reason for each dismissal yet the day after the organizational meeting three employees were discharged and a fourth who signed a union card immediately after the meeting was discharged. Two more employees were discharged who signed union cards on January 9 and 10, 1959. When two employees wore union buttons to the plant for the first time they were discharged within two days after wearing them. After the union representation petition was filed four more employees who were union members were discharged. Two of the employees who were laid off because of a lack of work were working on rush orders at the time of their discharge.

The respondent contends that there was insufficient and unsubstantial evidence to support the Board's finding that it had violated the Act by discharging the twelve employees. There is no direct evidence that the respondent committed unfair labor practices. It has been held, however, that a finding of the Board need not be supported by direct evidence. See: Radio Officer's Union of Commercial Telegrapher's Union v. N. L. R. B., 347 U.S. 17, 48–49, 74 S.Ct. 323, 98 L.Ed. 455. N. L. R. B. v. Link-Belt Company, 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. The Board's function was to determine the real reasons for the discharges and whether the reasons given by the employer were mere pretexts. In so doing it has the right to consider circumstantial evidence and draw inferences therefrom as direct evidence is not always obtainable. N. L. R. B. v. English Mica Company, 4 Cir., 1952, 195 F.2d 986; Eastern Coal Corp. v. N. L. R. B., 4 Cir., 1949, 176 F.2d 131. When the Board draws inferences from the evidence the Court of Appeals has no power to review those inferences. N. L. R. B. v. U. S. Truck Co., Inc., 6 Cir., 1942, 124 F.2d 887. The Board, in making a determination, however, must base it upon substantial evidence,

> "* * * that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." N. L. R. B. v. Oertel Brewing Company, 6 Cir., 1952, 197 F.2d 59, 62.

In our opinion, the circumstances reviewed by the Board and the inferences drawn therefrom were relevant and substantial evidence and support the findings and conclusions of the Board. The petition for enforcement is, therefore, granted.