**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MURRAY–OHIO MANUFACTURING COMPANY, Respondent.**

**No. 16413.**

United States Court of Appeals
Sixth Circuit.
April 19, 1966.

Robert B. Schwartz, N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N. L. R. B., Washington, D. C., on brief, for petitioner.

Frank A. Constangy, Atlanta, Ga., Constangy & Prowell, Atlanta, Ga., on brief, for respondent.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

PER CURIAM.

This case is before us on the petition of the Board for enforcement of its order issued against Murray-Ohio Manufacturing Company. Its decision and order are reported at 148 NLRB No. 153.

The Board found that during an intensive organizational campaign by a labor union the company violated Section 8(a) (1) of the National Labor Relations Act, as amended, (29 U.S.C. § 151 et seq.) by interrogating its employees about their own and other employees' union activities, by threatening an employee with the loss of his job unless he abandoned the union, and by requesting an employee to speak to a co-employee about the union and to ascertain how he felt about it. The Board further found that the company violated Section 8(a) (3) and (1) of the Act by discharging a timekeeper named Malcolm Tarkington, because of his union activity. The order of the Board required the company to cease and desist from engaging in the above unfair labor practices and to reinstate Tarkington with back pay.

Upon a review of the record we are of the opinion that there was substantial evidence to support the finding that the company violated Section 8(a) (1) of the Act in the interview by its foreman Umphrey with the employee, L. V. Kelly, and in the tape recorded conference between Personnel Director Smotherman and employee Howell. Both of these interviews were coercive in nature and constituted an interference with rights of the employees guaranteed in Section 7 of the Act. We find nothing wrong, however, in the interviews between Umphrey and Webb and General Foreman Jasper Sayre and Webb. Both Umphrey and Sayre merely exercised their right of free speech and their conversations involved no coercion, interference or threats.

The discharge of Tarkington requires consideration not only of the evidence, but of inferences which the Board drew therefrom.

Tarkington had been employed by the company for about five and one-half years. He signed a union authorization card and was actively supporting the union by talking with other employees and distributing authorization cards for their signatures. Hoyt Wright, a union organizer, requested Tarkington to obtain a list of the employees for whom he kept time, and lists from some of the other timekeepers. The union wanted this information so it could contact the employees in connection with its organizational efforts. Tarkington prepared a list of employees in his department from memory without consulting company records. Other timekeepers who were contacted by Tarkington copied the names from the company's time cards. When the company learned of Tarkington's activities relative to the lists of employees, it discharged him for the stated reason, "attempting to obtain unauthorized and confidential data and information from company records."

The hearing examiner credited Tarkington's testimony that he did not know that the employees' names were confidential and had never been so advised by the

company, and that he prepared his list of employees from memory. When Tarkington was discharged he was not asked for any explanation. He told the Personnel Director who discharged him that he did not know the names were confidential. The hearing examiner in considering conflicting testimony, found that the employees' names were not confidential.

The Board did not find it necessary to pass upon the issue of confidentiality because it relied upon and approved another finding of the examiner that the company "utilized Tarkington's activity in attempting to compile or secure a list of names of employees as a pretext to cloak its actual motive in discharging him because of his activity on behalf of the union."

In making this finding the Board took into account the long history of the company's hostility toward the labor union and the fact that in discharging Tarkington the company did not ask him if he did what he was accused of doing, or if he had any explanation. Instead, he was discharged without being given any opportunity to state his version of the facts. Had the company made inquiry, the examiner found, it could have ascertained that Tarkington did not copy any company record nor ask any timekeeper to make a copy. The examiner found further that when Tarkington asked the Personnel Director whether his being in favor of the union had anything to do with his discharge, the Director responded with an answer which was not the full truth, namely, that he did not know Tarkington was for the union. The Board also took into account the interviews between the Personnel Director and the employees, Ingraham and Howell, who were questioned extensively, not only about the lists, but also concerning union activities.

Even assuming that Tarkington did violate a company rule by obtaining confidential information as to the names of employees, this would not help the company if the real motivation for his discharge was his union activity. N. L. R. B. v. West Side Carpet Cleaning Co., 329 F.2d 758 (6th Cir. 1964); N. L. R. B. v. Murray Ohio Mfg. Co., 326 F.2d 509, 511, 517 (6th Cir. 1964). The motivation was a question of fact to be determined by the Board from consideration of all the evidence. E. g., N. L. R. B. v. Barberton Plastics Products, Inc., 354 F.2d 66 (6th Cir., decided Dec. 22, 1965).

In our opinion there was substantial evidence to support the findings and order of the Board. The inferences which it drew from the evidence were within permissible limits. Its findings and order are therefore binding upon us. Barberton Plastic Products, Inc. v. N. L. R. B., supra; Wonder State Mfg. Co. v. N. L. R. B., 331 F.2d 737 (6th Cir. 1964); N. L. R. B. v. Putnam Tool Co., 290 F.2d 663 (6th Cir. 1961).

The company's reliance upon N. L. R. B. v. Clearwater Finishing Co., 203 F.2d 938 (4th Cir. 1953) is misplaced because unlike the present case, there was no evidence in *Clearwater* to support a finding that the employee was discharged for any reason other than obtaining confidential information. As we have pointed out, there was such evidence in the present case.

Order enforced.