**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BUCKHORN HAZARD COAL CORPORATION, Respondent.**

No. 72–1408.

United States Court of Appeals, Sixth Circuit.

Jan. 18, 1973.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., John C. Getreu, Director, Region 9, N.L. R.B., Cincinnati, Ohio, David Miller, N. L.R.B., Washington, D. C., for petitioner; Peter G. Nash, Gen. Counsel, Patrick Hardin, Assoc. Gen. Counsel, Charles N. Steele, David Miller, N. L. R. B., Washington, D. C., on brief.

John L. Ray, Payne, Minor, Ray, Price & Loeb, Charleston, W. Va., for respondent.

Before PECK and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

This case is before the Court on a petition of the National Labor Relations Board for enforcement of its order issued against Buckhorn Hazard Coal Corporation. The facts are fully reported in the Board's decision and order, 194 NLRB #88, and will only be summarized here.

The company employed approximately thirty-five production employees at its deep mine operation in Hazard, Kentucky. On August 25, 1970, the union (The United Mine Workers of America) requested bargaining on the ground that it held authorization cards executed by 85% of the employees of this operation. The request was rejected and on October 14, the union filed a representation petition; a hearing was held on this petition, and a direction of election was issued.

Early the following month, the company halted its deep mine operation after receiving complaints from Georgia Power Company, its sole customer, about the quality of the coal mined. On the following day, the company decided to reopen the mine on a reduced, one-shift basis to try to find a higher quality coal. A limited number of former employees were recalled for this operation; among the twelve employees not recalled were the six charging parties.

During the months following the close-down of the mine (November and December), four of these former employees sought reemployment but were rebuffed by the mine superintendent and foreman who indicated that he thought they were not being recalled because of their union sympathies. The election was held on January 6, 1971, and the union lost by a wide margin.

On February 1, the company sent a letter to each of the former employees who had not been recalled offering him reinstatement as of February 8; three of the charging parties had secured other employment and declined this offer, but the others were eventually reemployed with the exception of Curtis Colwell, hereinafter discussed.

The Board found that the company violated Section 8(a)(1) of the National Labor Relations Act by threatening employees with closure of its deep mine, with consequent loss of employment to employees and by threatening to fire employees who signed union authorization cards or who supported the union. The Board also found that the company violated Sections 8(a)(3) and (1) of the Act by discriminatorily refusing to recall the six charging parties from layoff, and it ordered the company to compensate all six charging parties for any loss of earnings caused them by the discrimination and to offer reinstatement to Colwell.

██ The sole issue presented in this petition is whether substantial evidence on the record as a whole supports the Board's findings. The company contends that, in reaching its conclusions, the Board failed to consider evidence concerning the company's alleged threats to close the mine, evidence that two of the charging parties desired to withdraw the charges which they had made against the company, and evidence of industrial realities pertaining to the evaluation of certain statements concerning the closing of the mine should the union win the election. We find nothing in the record to indicate that the Board failed to consider any evidence presented by the company. Rather, the Board considered all the evidence presented, including evidence contrary to the company's position, and concluded that the company had violated the Act. If the Board's findings are supported by substantial evidence, this Court must accept them, even though we might have reached a different result had the matter been before us *de novo*. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962). Similarly, this Court must accept the Board's reasonable findings concerning a claim upon which the evidence is in conflict. N. L. R. B. v. Power Equipment Co., 313 F.2d 438, 442 (6th Cir. 1963).

██ The company's contentions are not well taken; the record supports the Board's conclusion that the company threatened to close the deep mine if the union campaign succeeded and that the employees who signed authorization cards would lose their jobs. It is a clear violation of the Act for an employer to threaten to close its place of business if its employees choose representation by a union. *E. g.*: N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Other threats were made to individuals as well; the mine superintendent made a statement to one employee that he had instructions to fire everyone who signed a union card, and he made another statement that the company was going to cut a man's salary, and perhaps fire him, because he supported the union. These findings are supported by the record, and constitute violations of the Act.

██ The company also contends that the uncorroborated, self-serving statements of the charging parties cannot constitute substantial evidence as a matter of law. We disagree. Since direct evidence of motivation which is not also self-serving is seldom available, the motivation required to establish unlawful discrimination may be shown by less than direct evidence. Shattuck Denn Mining Corp. v. N. L. R. B., 362

F.2d 466, 470 (9th Cir. 1966). This may consist of the testimony of the charging parties, if the hearing examiner and the Board choose to credit it, since the credibility of the witnesses is a determination to be made by the hearing examiner and the Board. N. L. R. B. v. Nelson Mfg. Co., 326 F.2d 397 (6th Cir. 1964). In addition, the question of the motivation of the company in not recalling these individuals is essentially a question of fact to be determined by the Board from a consideration of all the evidence. N. L. R. B. v. Murray-Ohio Mfg. Co., 358 F.2d 948, 950 (6th Cir. 1966).

The company relies upon N. L. R. B. v. Elias Brothers Big Boy, Inc., 327 F.2d 421 (6th Cir. 1964), and N. L. R. B. v. Barberton Plastics Products, 354 F.2d 66 (6th Cir. 1965), for the proposition that the uncorroborated testimony of a party who stands to benefit from an award of reinstatement and backpay cannot constitute substantial evidence. We do not read either of these cases so narrowly. In each case, the testimony of the charging party in question was found to be inherently untrustworthy, and neither party was considered to be a credible witness. In each case, this Court held that the Board's finding that the questioned testimony constituted substantial evidence was not warranted by the facts and circumstances of that case, and in neither case did this Court imply that the testimony of a charging party, standing alone, can never amount to substantial evidence.

█ In regards to the ordered reinstatement of the employee Colwell, the record shows that all six charging parties were sent letters on February 1, 1971, offering them reinstatement as of February 8. On that date, Colwell reported to the office as instructed, and was told that the company would again contact him in the future concerning further employment; no additional action was taken by the company.

█ The company contends that Colwell expressed disinterest in reemployment by not initiating further communication with the company. The company's obligation was to reinstate the employees discriminated against; in so doing it should bear the burden of notifying the employees of reinstatement, as this company did on February 1, but it cannot fulfill this obligation by simply instructing the employee to "keep in touch" concerning further employment. The record supports the Board's finding that Colwell was informed on February 8th that he would be reinstated, that no reinstatement was made, and that no refusal of the offer was made by Colwell. The Board's order directing reinstatement of Colwell and compensation for any loss of earnings caused him by the discrimination is based upon findings which are supported by substantial evidence on the record as a whole.

We have considered the other contentions raised by the company, including the contention that the evidence shows that the employees were recalled solely on the basis of seniority, and we find them to be without merit. For the foregoing reasons, the order of the Board is enforced in full.