Michael F. DILLEY, Captain, U. S. Army
Reserve, et al., Appellants,

v.

Clifford L. ALEXANDER, Jr., Secretary
of the Army, et al.

Raymond W. FONTAINE, Major, U. S.
Army Reserve, et al., Appellants,

v.

Clifford L. ALEXANDER, Jr., Secretary
of the Army, et al.

Milton D. O'QUINN, Appellant,

v.

Clifford L. ALEXANDER, Secretary
of the Army.

Major Russell A. POWELL, Appellant,

v.

Clifford L. ALEXANDER, Jr.,
Secretary of the Army.

Nos. 77–1789, 77–1790, 77–1791
and 77–1792.

United States Court of Appeals,
District of Columbia Circuit.

May 15, 1980.

Keith A. Rosenberg, Washington, D. C., was on motion for clarification of opinion, for appellants.

Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth and John Oliver Birch, Asst. U. S. Attys., Washington, D. C., were on response to motion for clarification of opinion.

Before WRIGHT, Chief Judge, MacKINNON and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Appellants Michael F. Dilley, et al., move this court for clarification of the opinion of February 26, 1979,[1] reversing the district court and holding the Army's Selection Board to have been constituted in direct violation of the statute. We ordered that appellants be reinstated to active duty and that the Army consider them for promotion by two promotion selection boards constituted in accordance with applicable laws.

Appellants' motion for clarification asserts that the Army has taken the position that appellants' reinstatement need not be retroactive. Because appellants' decision whether or not to return to active duty will

depend in part upon this determination, and because the Army's position is contrary to the intent of our opinion and the general rule governing reinstatement after illegal discharge from the armed services, we clarify our opinion: appellants are to be retroactively reinstated with full active duty back pay, allowances and other benefits of constructive service, as more fully set forth herein.

I.

Appellants are commissioned officers in the Army Reserve who served on active duty until their involuntary release in early 1977. Their release occurred because they were twice passed over for promotion to the next highest temporary grade by Army promotion selection boards convened in 1975 and 1976.[2] After notice of their imminent release, appellants initiated this suit in federal district court contending, *inter alia*, that their release was void under 10 U.S.C. § 266, which provides that each board convened for the purpose of promotion of Reserve members shall include an appropriate number of Reserve officers.

Prior to their actual release, appellants filed with the district court a motion for a preliminary injunction to prevent their separation from the service. The Army opposed the motion, contending that appellants would not suffer irreparable harm because "all pay, allowances, and seniority rights can be restored if Plaintiffs ultimately prevail on the merits." Defendants' Memorandum of Points of Authorities in Opposition to Plaintiffs' Motion for a Preliminary Injunction at 10. On the basis of this representation the district court denied appellants' motion, *Dilley v. Alexander*, 440 F.Supp. 375, 377 (D.D.C.1977), and appellants were released from active duty in the spring of 1977.

The district court subsequently granted the Army's motion for summary judgment

---

1. *Dilley v. Alexander*, 603 F.2d 914 (D.C.Cir. 1979).

2. Army Regulation 635–100 provides that commissioned officers who twice fail to be selected for promotion are to be involuntarily released from active duty in their commission.

on July 27, 1977, 440 F.Supp. 375, and upheld the determination of the Army Board for Correction of Military Records that the absence of Reserve officers on the selection boards was neither arbitrary, capricious nor contrary to law and at most constituted harmless error. 440 F.Supp. at 378–79.

On February 26, 1979, we reversed the decision of the district court, ruling that appellants' nonselection for promotion by the 1975 selection board was invalid because of the absence of Reserve officers among the board's members, that the 1976 Selection Board's failure to promote appellants was invalid because it "had before [it] records that reflected appellants' nonselection in 1975 even though appellants had never been lawfully passed over", 603 F.2d 914, 924 (D.C.Cir.1979), and that appellants' nonselection by the Army's Reconstituted Selection Board was invalid because that board had substantially fewer promotion vacancies to fill than the original 1975 selection board. In conclusion, we held,

> that the Corrections Board's treatment of appellants' claims was contrary to law and that the Secretary's actions thereon were arbitrary and capricious. Because the Army's gross violation of the statute and regulations governing its promotion selection procedures adversely affected appellants' consideration for promotion in 1975 and 1976, appellants are entitled to be reinstated to active duty and to be considered again by two promotion selection boards constituted in accordance with applicable statutes and regulations.

603 F.2d at 925.

We denied the Army's petition for rehearing, issuing an order and opinion *per curiam*, which was printed following the original panel decision, 603 F.2d 925 (1979). A motion for leave to file a second petition for rehearing we denied on July 26, 1979. The opinion in lieu of mandate was transmitted to the district court on November 21, 1979.

With the case in this posture in the district court, appellants filed a motion to implement the mandate, requesting relief in the form of active duty back pay, retirement pay, quarters allowance, accrued leave, hazardous duty pay, and reimbursement for loss of post exchange privileges, commissary privileges and medical costs. Appellants also requested that the court order erasure of records that showed enlisted service on the part of those appellants who had remained in the Army in an enlisted status, and that all records, including those reflecting nonselection by the promotion selection boards, be corrected to put appellants in the position they would have occupied had the Army not engaged in its unlawful selection procedure.

The Army opposed appellants' motion, contending that appellants sought relief exceeding that granted by this court, and that the relief we granted did not contemplate retroactive reinstatement or the benefits of constructive service. In its order of February 29, 1979, the district court did not express agreement with the Army's contentions, but declined to render specific orders of relief, citing the reference in our opinion to "the restricted role of the judiciary with respect to the internal affairs of the military departments", 603 F.2d at 919, and remanded the case to the Secretary of the Army

> with directions to implement the appropriate relief as required by law and by the opinion of the Court of Appeals, in particular, to reinstate the officer plaintiffs to active duty in a commissioned status in the grade and rank held at the time of their unlawful release, and, to the extent that retirements or resignations do not intervene, consider the plaintiffs anew by two properly constituted promotion selection boards.

The district court ordered the Secretary of the Army to implement the mandate within 120 days.[3]

---

**3.** The district court did hint at the relief it envisioned, stating that "defendants have recognized the existence of a substantial body of law, including 'numerous cases in the Court of

Claims', which have a bearing on which of plaintiffs' particular items of proposed relief will be necessary in order to implement fully the Court of Appeals' holding that the plaintiffs

On March 10, 1980, appellants filed a motion to reopen the proceedings, or in the alternative, for the district court to clarify its opinion. Appellants cited a statement by the Office of the Judge Advocate General of the Army indicating that the Army did not view the order of the district court or our court's opinion as mandating retroactive reinstatement. The Army appeared before the district court at oral argument on March 25, 1980, and verified that this was indeed its position, arguing that the opinion of this court did not require retroactive reinstatement, and that the grant of such relief was within the discretion of the Secretary of the Army. Appellants' Motion for Clarification at 6. The district court denied appellants' motion to reopen the proceedings as premature, since the 120 day period in which the Army was to implement the court's order had not expired.

## II.

Since the last order of the district court provided the Army with 120 days in which to implement our mandate, the Army jealously guards its current supervision of the relief to be provided the appellants. The Army contends that there are several obstacles to our present consideration of the case: first, the Army protests that clarification of our opinion will entail a recall of the mandate, and that there exists insufficient cause for doing so; second, the Army asserts that we have ceded control over our mandate to the district court, and cannot retrieve it, or, in the alternative, cannot retrieve it until the completion of the 120 days in which the Army is to implement the mandate. We find these alleged obstacles no obstruction to a recall of our mandate.

## A.

The Army unabashedly maintains that our order that appellants be reinstated

means precisely that and no more. They construe our opinion to grant appellants only the limited relief of non-retroactive reinstatement, and submit that appellants' motion for clarification invites a recall of our mandate. And, the Army argues, appellants have not shown the circumstances requisite for such a recall.

We address the standards governing the propriety of recall of a mandate that were discussed in *Greater Boston Television Corporation v. FCC*, 463 F.2d 268 (D.C.Cir.1971) *cert. denied, sub nom., WHDH v. FCC*, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972), by Judge Leventhal, who observed that the general doctrines underlying the recall of a mandate involve the court's power, procedure and grounds of action.

■■■ The power of a court to recall its mandate emanates not from the Federal Rules of Appellate Procedure or the Rules of our Circuit,[4] but from an inherent power to recall a mandate upon a showing of good cause, as most persuasively expressed by the likelihood of injustice. 463 F.2d at 276–77, *citing Gradsky v. United States*, 376 F.2d 993, 995 (5th Cir. 1967) (*vacated on other grounds, sub nom., Roberts v. United States*, 389 U.S. 18, 88 S.Ct. 1, 19 L.Ed.2d 18 (1967)); *Hines v. Royal Indemnity Co.*, 253 F.2d 111, 114 (6th Cir. 1958). Courts acknowledge that the power to recall a mandate "should be exercised sparingly", *Estate of Iverson v. Comm'r.*, 257 F.2d 408, 409 (8th Cir. 1958), based upon "exceptional circumstances", *Hines v. Royal Indemnity, supra*, at 114, or a "special reason", *Greater Boston Television Corp. v. FCC, supra*, at 278. Only in such circumstances should the doctrine of repose admit of disturbance to settled litigation.

■■■ The grounds that justify recall of a court's mandate range from the most severe, such as fraud upon the court, to the

were *unlawfully released from active duty.*" Order of February 29, 1980 at 2, 3. We have little doubt that the district court was referring to the cases we cite in this opinion for the proposition that retroactive reinstatement is the appropriate remedy for illegal discharge from the armed services.

4. Since recall of the court's mandate is not governed by these rules, neither are the time periods associated with them applicable here. Hence, the Army's claim that appellants' motion for clarification is time-barred is meritless.

more mundane, for example, correction of a clerical mistake. More pertinent to our present situation, uniformity in the case law allowed Judge Leventhal to confidently declare that "[a]n appellate court likewise has continuing power to accept and pass upon a petition to clarify an outstanding mandate." 463 F.2d at 278, *citing Bailey v. Henslee*, 309 F.2d 840 (8th Cir. 1962); *Meredith v. Fair*, 306 F.2d 374 (5th Cir. 1962), *cert. denied*, 371 U.S. 828, 83 S.Ct. 49, 9 L.Ed.2d 66 (1962). A motion for clarification, therefore, is one procedure by which the stark necessity for recall of a mandate may be brought to the attention of the court.

Against the backdrop of these judicially-fashioned standards, we conclude that we have ample cause to recall our mandate. There could be no more good cause provided, nor injustice incurred, than by the misconstruction of our mandate by the Army or the court below. The Army starts its argument with the premise that our decision did not find the promotion selection boards to be *void ab initio*. It then leaps to infer that the only remedy we intended was to reinstate appellants and reconstitute the boards for rehearing of the appellants' cases. We hasten to point out, however, that the promotion selection boards were *void ab initio* insofar as they considered the promotions of *appellants*. Congress has clearly provided that promotion boards without Reserve officers among their members cannot pass on the promotional prospects of Reserve officers. The invalid Boards convened by the Army were only, however, the beginning of appellants' problems. Had this appeal and decision occurred the very next day after the nonselection of appellants by the 1975 selection board, the relief suggested by the Army would be appropriate—reinstatement to active duty and consideration by properly constituted promotion boards.[5] But since the litigation that was thus forced on the Reserve officers by the Army's wrongful conduct has itself exacerbated the wrongs inflicted upon these deserving appellants, the relief applied must remedy not only the original, but also the additional and continuing wrongs.

It would be a grave injustice to restrict relief in this case to a delayed reinstatement of appellants without awarding them credit for constructive service. The harm inflicted upon appellants was first felt in 1975, when the illegally constituted promotion selection board passed them over. This damage was then intensified when appellants were not selected by the second promotion board in 1976, because this compelled their involuntary release in the early part of 1977. We must remember that appellants are career officers; deprivation of their livelihood was not a momentary insult that ended the instant they were thrown out on the streets. Rather, appellants faced the loss of their careers, and with it the loss of attendant benefits they would have earned and received during this period following the termination of their service as officers.

Accordingly, the remedy envisioned by our first opinion was that appellants would be retroactively reinstated to the positions they held on their respective dates of separation, with full active duty back pay, allowances and other benefits of service, including active duty credits (based on constructive service) for retirement purposes. This relief is consistent with the general rule that a plaintiff is entitled to receive the benefits of constructive active duty from the date of his erroneous release until the date he is restored to active duty. Appellants have never been lawfully discharged, so in the eyes of the law, they remain in service. *Smith v. United States*, 2 Ct.Cl. 206 (1866) marks the historical cornerstone for this doctrine, and it has been followed to the present. *See, e. g., Fly v. United States*, 100 F.Supp. 440, 120 Ct.Cl. 482 (1951); *Motto v. United States*, 348 F.2d 523, 172 Ct.Cl. 192 (1965); *Diamond v.*

---

**5.** Further relief, such as correction of records, would also be appropriate. *See* discussion, *infra*.

*United States,* 427 F.2d 1246, 192 Ct.Cl. 502 (1970); *Yee v. United States,* 512 F.2d 1383 (1975); *Craft v. United States,* 589 F.2d 1057 (Ct.Cl.1978); *Sanders v. United States,* 594 F.2d 804 (Ct.Cl.1979).

We summarize our response to the Army's contention that we cannot recall the mandate in this case, as follows: Because the application of the Army's preferred relief, denying constructive service, would result in an undoubted injustice to appellants, we find the "exceptional circumstances" necessary to retrieve the mandate that has left our chambers. Furthermore, even were the circumstances less pressing, we still have "continuing power to accept and pass upon a petition to clarify an outstanding mandate." *Greater Boston Television Corp. v. FCC, supra,* at 278.

We find, therefore, that we have sufficient grounds and power to recall our mandate and do so for the purpose of the clarification herein indicated. Additionally, we approve of the procedural tack taken by appellants to bring this matter to our attention. When delay and misconstruction of our mandate seriously threaten its implementation, we will entertain a motion for its clarification. Since the recalcitrance of the Army has necessitated this clarification, we have even less difficulty surmounting the procedural obstacles with which the Army attempts to block the just and intended result.

### B.

▮ The final impediment posed by the Army to our clarifying opinion today is its argument that by transmitting our opinion in lieu of mandate to the district court,[6] we have effectively transferred control of the remedy that we ordered to the district court, and to the Army, to which it remanded the order for implementation. Even were we to accept the Army's argument that we have lost jurisdiction of the case, we would not be prevented from issuing a clarifying opinion. Appellants do not seek a "modification" as the Army contends; rather, they seek implementation of the remedy that we intended and ordered in our opinion. Faced with the district court's apparent uncertainty concerning our mandate, and the plainly erroneous interpretation of the Army, we would be remiss were we to abandon our decision that we reached in appellants' favor.[7]

The district court remanded the case to the Secretary of the Army "with directions to implement the appropriate relief as required by law and by the opinion of the court of appeals. . . ." Yet the Army does not conceal its intention to provide appellants with only non-retroactive reinstatement. *See* Army Response to Appellants' Motion for Clarification of Opinion. And non-retroactive reinstatement is *not* the relief "required by law and by the opinion of [this] court of appeals".

Nor is our clarification premature. The Army has sent letters to all appellants requiring that they choose whether or not to report to active duty, or to retire. *See* Army Response at 7. Such a determination by appellants hinges upon whether they are awarded constructive service, since many of the appellants will have completed the

---

6. After an appeal has been decided, the practice in this Circuit is to transmit, in lieu of mandate, a copy of the opinion and a certified copy of the judgment of our court to the district court. *See* Fed.R.App.P. 41(a). The district court is then bound to follow our mandate, which it is to construe in the light of the opinion of the court deciding the case. *Nixon v. Richey,* 513 F.2d 430, 435–36 (D.C.Cir.1975); *Yablonski v. UMW,* 454 F.2d 1036, 1038 (D.C.Cir.1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972).

7. It seems to us to be a shared responsibility that our mandate be implemented. In an opinion written in response to and granting a Motion for an Order to Direct Compliance with a Mandate, Judge Robinson stated:

> The decision of a federal appellate court establishes the law binding further action in the litigation by another body subject to its authority. The latter 'is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court deciding the case' . . . ."

*City of Cleveland, Ohio v. Federal Power Commission,* 561 F.2d 344, 346 (D.C.Cir.1977).

twenty years service predicate to retirement if they are deemed to have constructively served during the period of their illegal discharge. The Army intends to force this decision upon appellants before they are apprised of their remedy by the Secretary, as witnessed by the Army's recall to active duty of appellant Fontaine, who would have been retirement eligible in August 1979 had he received constructive service.[8]

Hence, the Army has forfeited any claim it might have had pursuant to the order of the district court to exercise its *discretion* in fashioning the specifics of the remedy ordered by this court. The Army's discretion never stretched so far as to allow it to contravene the opinion of this court, the remedy ordered, or the case law upon which the relief is based. Since the Army's position necessitates more precise elaboration of the remedy ordered by this court, in the succeeding section of this opinion we lay out our order in detail.

### III.

Judicial relief provided to military servicemen who have been wrongfully discharged from service has been premised upon one central principle: making the injured men "whole". Courts attempt to return successful plaintiffs to the position that they would have occupied "but for" their illegal release from duty. In order to grant such relief, courts have not been reticent to apply the legal fiction of "constructive service"; as appellants have never been lawfully terminated from active duty, they are deemed to have served during the time of their illegal release. Accordingly, it is fully consistent with the holding in our previous opinion in this case to award appellants retroactive reinstatement to the positions they held on their respective dates of separation, with full active duty pay, allowances and other benefits of service, including active duty credits for retirement purposes.

The first step to be taken toward implementation of this relief is for the Secretary of the Army to order the correction of appellants' military records in accordance with our opinion. While we recognize that the terms of 10 U.S.C. § 1552(a), authorizing the correction of records by the Secretary, are permissive,[9] we cannot agree with the Army's contention that correction in this instance is within the "discretion" of the Secretary. Although the district court remanded to the Secretary for implementation of relief, this relief must follow our opinion, which we make more explicit here. *See City of Cleveland, Ohio v. Federal Power Commission*, 561 F.2d 344, 346 (D.C.Cir. 1977).

The corrected records should reflect that appellants constructively served during the period of their illegal discharge, but they should not contain any adverse reference to the passing over of appellants for promotion by the selection boards of 1975 and 1976.[10] Once corrections have been made

---

8. Affidavit of Robert M. Wright, Attached to Appellants' Reply to the Army's Response to Appellants' Motion for Clarification.

9. Section 1552(a) states in relevant part:
   The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

10. They may contain statements to the effect that no adverse inference from appellants' nonselection should be drawn. Appellants suggest and we approve of the following corrections of records. Appellants who reverted to enlisted status or accepted warrant officer commissions subsequent to their original release from active duty should have reference to such service deleted from their records. Pay and allowance received during this service shall be treated as civilian pay to be deducted from back pay in the manner discussed in Section III C of this opinion, *infra*.

For those appellants who do not qualify for and choose to retire pursuant to this relief of constructive service, the Secretary should ensure that records contain Officer Efficiency Reports for the period of illegal discharge that will not prejudice appellants' chances for promotion. *See Sanders v. United States*, 594 F.2d 804, 818–20 (Ct.Cl.1979). Finally, we instruct the Army to attempt to obviate any further

pursuant to 10 U.S.C. § 1552(a), the Army is authorized, under section 1552(c), to reimburse appellants for any amounts owed them. This will involve more than a few simple calculations because once the records have been corrected and the appellants' separation invalidated, any readjustment pay [11] received by appellants at the time of their release is also invalidated. *Craft v. United States*, 589 F.2d at 1069; 56 Comp.Gen. 587 (1977). To sort out those payments due the appellants, as well as payments to be returned to the Army, we unravel the reimbursements involved.

### A.

Most fundamental to appellants' reimbursement is an award of back pay; under section 1552(c), this is lumped with other remunerations of service, including "pay, allowances, compensation, emoluments or other pecuniary benefits". In their Motion, their Memorandum of Points and Authorities and their Proposed Order to Implement the Mandate of this court, submitted to the district court, appellants proposed that they receive allowances including "all applicable allowances allowed by law which would have accrued to the Plaintiffs had they actually served on active duty . . . including but not limited to, quarters allowance, accrued leave, hazardous duty pay, post exchange privileges, commissary privileges and reimbursement for medical expenses (including the health insurance premiums) incurred by the Plaintiffs and their dependents during the period of [illegal] release. . . ."

We have no quarrel with the principle behind this proposal—restoring to appellants those benefits they would have received in the absence of illegality—but cer-

tain items of requested relief in this list cannot be definitely ascertained and reduced to a sum certain. For instance, claims for reimbursed allowances for post exchange and commissary privileges, and possibly hazardous duty pay, appear to be speculative in amount, hence should not be awarded.[12] On the other hand, the Court of Claims has upheld claims for reimbursement for quarters allowances, and for medical or dental expenses that would have been covered by the Army had appellants been serving at the time of their expense. *See*, e. g., *Gearinger v. United States*, 412 F.2d 862, 188 Ct.Cl. 512 (1969); *Garner v. United States*, 161 Ct.Cl. 73 (1963). We approve of these principles and other reimbursement for all pay and allowances that appellants would have received but for their illegal separation, to the extent that such sums can be calculated with a reasonable degree of certainty.

### B.

Those appellants who did not remain in the service as enlisted men or warrant officers received readjustment pay pursuant to the workings of 10 U.S.C. § 687(a). Once the records of these appellants are corrected to reflect that they should not have been separated, the readjustment payments will be treated as payments erroneously made. *Craft v. United States, supra*, at 1069. As such, the Army may have a reasonable expectation of reimbursement. We agree, but refer to the observations of the Court of Claims in *Craft* concerning these payments. The Court noted that the readjustment payments were correct when made, since they were "utilized for the purpose for which [they were] designed—to provide a monetary cushion to soften the transition to civil-

---

adverse effects to appellants' careers in its correction of appellants' military records.

11. Readjustment pay would have been provided to appellants under the following statutory scheme, 10 U.S.C. § 687(a):
   ". . . a member of a reserve component . . . who is released from active duty involuntarily, . . . and who has completed, immediately before his release, at least five years of continuous active duty, is

entitled to a readjustment payment computed by multiplying his years of active service (other than in time of war or of national emergency declared by Congress after June 28, 1962), but not more than eighteen, by two months' basic pay of the grade in which he is serving at the time of his release. . . ."

12. *See In re Gaddini*, Dec. 14, 1979 —— Comp. Gen. ——.

ian life; and such use was required by virtue of a mistake made solely by the Army. To classify [these payments] as a debt subject to restitution, in some circumstances, would offend equity and good conscience . . . ." 589 F.2d at 1069.

Both the Court of Claims and the Comptroller General attempt *not* to offend equity by "look[ing] toward a result where the returning officer would have no net indebtedness in his reconstituted status". *Craft, supra*, at 1069, *citing* 56 Comp.Gen. 587, 592. It seems that the best means to ensure that no appellant is penalized for receipt of the readjustment pay is to subtract the readjustment pay owed to the government from the back pay owed by the government to appellant. In the unlikely event that the readjustment pay exceeds the back pay owed any appellant, we would recommend waiver [13] of the soldier's obligation to repay the readjustment pay. We do not believe that readjustment pay owed to the government should be subtracted from any of the appellants' benefits that will begin to accrue after the date of their actual reinstatement.

### C.

Appellants recognize that the Army has a right to reduce the amount of back pay owed appellants by the amount of civilian earnings made during the period of illegal separation. This deduction has both legal and equitable underpinnings, *see Motto v. United States*, 360 F.2d 643, 175 Ct.Cl. 862 (1966), but it is not a debt, and most closely resembles mitigation of damages. No independent cause of action accrues in the government to recoup those earnings made by appellants in the civilian sector, so if civilian earnings exceed the sum of back pay and allowances after the readjustment pay has been subtracted, the government is not entitled to an award based upon appellants' civilian earnings. *Craft, supra*, at 1068; 56 Comp.Gen. at 591.

### IV.

Despite the Army's assurances before the district court at the start of this litigation in 1977 that "all pay, allowances, and seniority rights can be restored if Plaintiffs ultimately prevail on the merits", the Army resists its duty to restore appellants to the position they would have occupied were it not for the Army's illegal promotion selection process. The Army thus stands in direct contradiction to the intent and holding of our earlier opinion, and the general rule requiring retroactive reinstatement for illegally discharged servicemen. We have felt it incumbent upon us, therefore, to clarify our opinion to ensure that appellants receive their rightful remedy.

We return the mandate to the district court, which may, in its discretion, choose to allow the 120 day period in which the Army is to implement the mandate to run its course. Although it will be left to the Army to calculate the specifics of the remedy for each appellant, we include in our clarification today the caveat that in its computations and exercise of judgment, the Army is to liberally construe the benefits that are awarded by this decision. After five years of injury and three years of litigation, appellants deserve a better fate than the parsimony the Army would bring to bear upon their court-ordered relief. This decision of the court retains jurisdiction to take such further action in the case as may be necessary in the event that any action by the Army and District Court does not conform to this Court's decision.

*So ordered.*

---

**13.** Waiver may be effected pursuant to 10 U.S.C. § 2774(a), when in the interests of "equity and good conscience" and "the best interest of the United States". Waiver of the obligation to repay the readjustment pay would be especially appropriate in the case of the deceased appellant.