**A TO Z PORTION MEATS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1469.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 20, 1979.

Decided Nov. 4, 1980.

On Motion for Clarification March 18, 1981.

Thomas M. Seger, Baker, Hostetler & Patterson, Cleveland, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Barbara Bado, Janet C. McCaa N. L. R. B., Washington, D. C., Tobie Braverman, for respondent.

Before CELEBREZZE and JONES, Circuit Judges, and JOINER, District Judge.*

PER CURIAM.

A to Z Meats petitions for review of the National Labor Relations Board's majority decision and the Board has cross–applied for enforcement of its order. The Board held in its Order, 238 NLRB 157 (1978), that the Company's discharge of William Hart violated Section 8(a)(3), because Hart was organizing workers, and Section 8(a)(1), because of a statement made to another employee. The Board also directed that A to Z Meats recognize and bargain with the Amalgamated Food and Allied Workers. Because the Board's findings are not supported by substantial evidence, we decline to enforce the Board's order as to Section 8(a)(3) which directed the reinstatement of Hart.

In early March, Hart, an employee of A to Z Portion Meats, was asked to assist in

* Charles W. Joiner, District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

the unionization of the plant. On March 6, at the only restaurant in Buffton, Ohio, Hart met with a union organizer and a union business agent. As the three men were discussing union organization Bender, the general manager, walked by within six feet of the discussion and passed a second employee Shulaw who was joining the meeting. Bender commented on seeing Shulaw so early. The Company has no history of collective bargaining, and its plant is located in a very small town in Ohio.

Mr. Morris, a federal health inspector at the Buffton, Ohio plant of A to Z Portion Meats, testified that he informed the owner–general manager, Bender, that Bender had to order Hart to wear a hat on March 15, 1976 or Morris would be forced to take further actions. Bender said after thinking about it over night that he told Hart that he "hated to say this but that he [Hart] was not working out" and that "he and A to Z would have to part company." Bender denied knowledge of Hart's union activities and said that the efforts of Morris, Bender, and other employees had been unsuccessful in getting Hart to wear a hat.

Hart had been secretly collecting union authorization cards in this 16–person meat department and had forwarded to the union nine cards the day before his discharge.

Two days after Hart's discharge, Bender said to Shulaw and other employees to get moving because "No Goddamn union gonna protect you."

The statement made by Bender to Shulaw is a violation of 8(a)(1). The Board's order with respect to Shulaw and for recognition are supported by substantial evidence.

There was not substantial evidence to support the Board's conclusion that Hart was discharged because of union activity. *NLRB v. Buckhorn Hazard Coal Corp.*, 472 F.2d 53 (6th Cir. 1973). In this case the Board has attempted to infer knowledge of union activity from extremely limited information. We have refused to enforce Board orders in similar cases in which the Board drew an unwarranted inference from circumstantial evidence. *NLRB v. Armitage Sand and Gravel, Inc.*, 495 F.2d 759 (6th Cir. 1974). Accordingly, the Board's order with respect to William Hart is not enforced and in all other respects the Board's order is ENFORCED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Because I believe the Board's decision that Hart's discharge was based upon anti–union animus is supported by substantial evidence, I dissent from the Court's decision not to enforce all of the Board's order.

Hart began getting recognition cards signed after the March 6 meeting. He would meet secretly in the home of fellow workers, get their signatures and swear them to secrecy. By March 16, Hart had forwarded to the union 9 authorization cards. Hart was discharged on March 16.

The Board based its finding of discriminatory animus upon the timing of Hart's discharge; evidence of an anti–union attitude; the small size of the work force; and the shifting basis for discharge. The Company said first, that Hart was fired for not wearing a hat, then because he was late for work, and third, because he was "not working out." Hart had never been advised that not wearing a hat was a ground for discharge. Further, other employees were often hatless.

The Board has the duty to determine the real reason for discharge of a protected employee. *NLRB v. Putnam Tool Co.*, 290 F.2d 663 (6th Cir. 1961). It has the responsibility to determine if the stated reason for the discharge is a pretext. *NLRB v. Murray–Ohio Manufacturing Co.*, 358 F.2d 948 (6th Cir. 1966). The Board's findings must be deferred to if they are supported by substantial evidence.

The facts here are sufficient in my opinion to amount to substantial evidence. If we do not permit the Board to infer anti–union animus from these circumstances, we will in essence severely restrict the protection afforded to workers by the Act. No similar restrictions are imposed upon the district court or juries in criminal cases,

which require a higher standard of review. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1943). Hart should be reinstated. His failure to wear a hat may be an indictment of some packing plants, but in these circumstances his discharge cannot be reasonably based upon that rationale. Therefore, I dissent from the court's decision not to enforce all of the Board's order.

Before JONES, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and JOINER, District Judge.[*]

## ON MOTION FOR CLARIFICATION

PER CURIAM.

■ A to Z Portion Meats has petitioned this court for clarification of the per curiam opinion issued November 4, 1980. In that decision we concluded that the Board's finding that employee William Hart had been unlawfully discharged because of his union organizing activity was not supported by substantial evidence. We nevertheless proceeded to enforce the Board's issuance of a bargaining order. A to Z now argues that by denying enforcement to the Board's finding that Hart had been illegally discharged, the court vitiated the finding upon which the Board had based its issuance of a bargaining order. Finding merit in this contention, we treat the petition for clarification as a petition for recall of the mandate,[1] grant the petition, and deny enforcement to the Board's order requiring the Company to recognize and bargain with the Amalgamated Food and Allied Workers. We need recapitulate only briefly the operative facts and our reasons for initially denying enforcement to that portion of the Board's order requiring the company to offer reinstatement to William Hart.

A to Z Portion Meats operates a meat processing plant in Bluffton, Ohio, a small town of some 3,000 people. Sixteen of the company's thirty-five employees work in the plant's production and maintenance department. In early 1976 some of those employees discussed the possibility of unionizing the plant. William Hart played a central role in these discussions. Prior to his employment at A to Z, Hart had been a member of the Amalgamated Food and Allied Workers, District Union 626. On March 2, 1976, Hart contacted a union representative and arranged a meeting. Four days later Hart met two union representatives at Engle's Restaurant, the only Restaurant in Bluffton. The owner-manager of A to Z, Robert Bender, was eating breakfast at Engle's when they arrived, and passed their booth when leaving. On his way out, Bender also passed another employee, Philip Shulaw. Bender and Shulaw spoke briefly, then Shulaw joined Hart and the union representatives. Hart, Shulaw, and the union representatives then left the restaurant and went to Hart's home, where Hart and Shulaw signed union authorization cards. Hart also received union authorization cards to distribute to the Company's other employees. During the next ten days Hart made covert visits to six employees at their homes and obtained their signatures on union authorization cards. Hart asked each employee to keep his organizing activities a secret and promised that he would keep their names confidential. At no time did Hart engage in any organizational activity at the plant. On March 16, Hart forwarded nine authorization cards to the union.

That same day Hart was discharged, allegedly the culmination of his recurrent refusal to abide by a state regulation govern-

[*] Charles W. Joiner, District Judge, United States District Court for the Eastern District of Michigan.

1. "A motion for clarification . . . is one procedure by which the stark necessity for recall of a mandate may be brought to the attention of the court." *Dilley v. Alexander*, 627 F.2d 407, 411 (D.C. Cir. 1980). Since the power of a court to recall its mandate is rooted in the inherent power of the court, *Dilley, supra*; *Hines v. Royal Indemnity Co.*, 253 F.2d 111, 113 (6th Cir. 1958); *see also American Iron & Steel Institute v. EPA*, 560 F.2d 589, 592–94 (3rd Cir. 1977), *cert. denied* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978), the Federal Rules of Appellate Procedure and the Rules of our Circuit, including the time periods associated with those rules, are not applicable here.

ing the company's operation. Specifically, from the start of his employment in May, 1975, Hart had repeatedly failed to wear suitable head covering when working with exposed meat, despite his admitted knowledge of the Ohio Dept. of Agriculture regulation requiring such clothing and the instructions he had received to wear a hat.

On March 15, 1976, an inspector for the Division of Meat Inspection of the Ohio Department of Agriculture told Bender that Hart would have to wear a hat while working "or else." The inspector, George Morris, testified that he had a continuing problem getting Hart to wear a hat. Bender believed that Morris, as he was empowered by Ohio law to do, would close down the equipment operated by Hart if Hart did not comply with the head covering regulation. After his discussion with Morris, Bender took a hat to Hart and told him he had to wear it. Hart put it on, but later that afternoon Bender saw Hart working without the hat. As Bender testified, this constituted the proverbial "straw that broke the camel's back." On March 16, 1976 at approximately 3:00 P.M., Bender asked Hart to accompany him into the small office in the front of the plant. Bender told Hart that he "hated to say this but that he was not working out" and that "he and A to Z would have to part company." Hart asked Bender if there were any hard feelings and Bender replied there were not.

Bender testified that he first learned of Hart's union organizational activities on the day after the discharge. On March 17, Bender received a mailgram from the union's attorney indicating that the union was in the process of organizing the company's employees and that the union considered Hart's discharge to be a violation of the labor laws.

■ The next day Bender asked Shulaw "how many secret meetings" had been held. Shulaw denied that there were any secret meetings and Bender replied "if you guys are gonna get a union in here all you guys are gonna do is cut your own throats." This statement made to Shulaw is a clear violation of 8(a)(1) and there is substantial

evidence in the record to support the Board's finding that Bender had, in fact, made the statement. There is not, however, substantial evidence in this record to underscore the Board's finding that Hart had been discharged because of his union activity.

■ To establish an 8(a)(3) violation in the discharge of William Hart, it was incumbent upon the General Counsel to demonstrate that Bender possessed prior knowledge of Hart's union activities. *NLRB v. Armitage Sand & Gravel, Inc.*, 495 F.2d 759 (6th Cir. 1974). In this case the Administrative Law Judge and the Board inferred prior knowledge on Bender's part. Certainly, the Board may properly infer knowledge when that inference is drawn from substantial evidence. *NLRB v. Buckhorn Hazard Coal Co.*, 472 F.2d 53 (6th Cir. 1973). Here it was not. The Administrative Law Judge's and the Board's inference was based solely upon their disbelief of Bender's stated reasons for discharging Hart. The Administrative Law Judge, as was well within his prerogative, chose not to credit the testimony of Bender and state meat inspector Morris regarding the reasons for Hart's discharge. Based upon this disbelief, the Administrative Law Judge and the Board drew an inference of prior knowledge. Our problem with this approach is that it is tantamount to compelling the company to disprove prior knowledge. In other words, the Board relied upon the company's failure to provide convincing evidence that the discharge was not motivated by anti-union animus as the basis for its inference that the company did, in fact, have prior knowledge of Hart's activities. This inference is not supported by substantial evidence. Hart painstakingly conducted his organizing activities in a manner designed to conceal them from the company. There is no evidence in the record which indicates that Bender or any other company official was aware of the unionization efforts until the union's mailgram arrived on March 17. In these circumstances, the absence of any evidence supporting an inference of prior knowledge requires that

the finding of discriminatory discharge be reversed. This holding, of course, should not be read as a general rule; there are circumstances where inferences of discriminatory intent can be drawn from noncredible testimony.

The Board premised its issuance of a bargaining order primarily upon the finding of an illegal discharge. Reasoning that the discharge of Hart, the chief organizer, would cause a "lingering chill" among the remaining employees regarding the union's majority status, the Board concluded that a bargaining order was warranted. Since we have concluded that the discharge of Hart was not illegal, the underlying basis for the bargaining order disappears. Without the underlying unfair labor practice, it follows that enforcement of the bargaining order must be denied. *See Red Oaks Nursing Home, Inc., v. NLRB,* 633 F.2d 503 (7th Cir. 1980); *NLRB v. Peninsula Ass'n For Retarded,* 627 F.2d 202, 204–05 (9th Cir. 1980).

NATHANIEL R. JONES, Circuit Judge, dissenting.

Because I believe the Board's decision that Hart's discharge was based upon anti-union animus is supported by substantial evidence, I dissent from the Court's decision not to enforce all of the Board's order.

Hart began getting recognition cards signed after the March 6 meeting. He would meet secretly in the home of fellow workers, get their signatures and swear them to secrecy. By March 16, Hart had forwarded to the union 9 authorization cards. Hart was discharged on March 16.

The Board based its finding of discriminatory animus upon the timing of Hart's discharge; evidence of an anti-union attitude; the small size of the work force; and the shifting basis for discharge. The Company said first, that Hart was fired for not wearing a hat, then because he was late for work, and third, because he was "not working out." Hart had never been advised that not wearing a hat was a ground for discharge. Further, other employees were often hatless.

The Board has the duty to determine the real reason for discharge of a protected employee. *NLRB v. Putnam Tool Co.,* 290 F.2d 663 (6th Cir. 1961). It has the responsibility to determine if the stated reason for the discharge is a pretext. *NLRB v. Murray-Ohio Manufacturing Co.,* 358 F.2d 948 (6th Cir. 1966). The Board's findings must be deferred to if they are supported by substantial evidence.

The facts here are sufficient in my opinion to amount to substantial evidence. If we do not permit the Board to infer anti-union animus from these circumstances, we will in essence severely restrict the protection afforded to workers by the Act. No similar restrictions are imposed upon the district court or juries in criminal cases, which require a higher standard of review. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1943). Hart should be reinstated. His failure to wear a hat may be an indictment of some packing plants, but in these circumstances his discharge cannot be reasonably based upon that rationale. Therefore, I dissent from the Court's decision not to enforce all of the Board's order.