**DISTRICT OF COLUMBIA,**
**Appellant,\***

v.

**Ronald L. STOKES, Appellee.**

---

\* This appeal was previously captioned *District of Columbia Taxicab Commission v. Ronald L. Stokes.* The Taxicab Commission cannot,

No. 00–CV–1401.

District of Columbia Court of Appeals.

Argued Oct. 31, 2001.

Decided Nov. 21, 2001.

however, sue or be sued in its own name, *see* D.C.Code § 50–304 (2001), and we have al- tered the caption accordingly.

Carl J. Schifferle, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Leonard L. McCants, Largo, MD, for appellee.

Before STEADMAN, SCHWELB, and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

This appeal arises from appellee Ronald L. Stokes' claim that the abolition of his statutorily created position as Chief of the District's Office of Taxicabs constituted an unlawful reduction in force (RIF). The Office of Employee Appeals (OEA) held that the separation of Stokes from government service was unlawful, but granted only limited relief. On March 22, 2000, in what we shall call Order No. 1, the trial judge held that the remedy authorized by the OEA was inadequate, and she remanded the case to the OEA with instructions that Stokes be reinstated and receive full back pay and benefits from the time of the RIF to the present. The District of Columbia did not appeal from Order No. 1,

and on May 31, 2000, the OEA issued an order implementing the trial judge's directive.

On June 15, 2000, the District, invoking Super. Ct. Civ. R. 60(b)(6) and "the equitable powers of this [c]ourt," filed a motion for relief from Order No. 1. The District alleged, *inter alia*, that on January 22, 1998, Stokes had been convicted in the United States District Court for the District of Columbia of several counts of criminal conduct committed in his capacity as Chief of the Office of Taxicabs, including receipt of a gratuity by a public official,[1] first degree theft,[2] receipt of a bribe by a public official,[3] and acceptance of a bribe by a public servant.[4] The District further alleged that on June 10, 1998, Stokes had been sentenced to a term of imprisonment for sixty months and fined $75,000. The District requested that the court "exercise its equitable powers to permit the record to be reopened [for additional fact-finding] to reflect [Stokes'] subsequent indictment and conviction for abusing the position for which he now seeks retroactive compensation...." Stokes responded to the District's motion, arguing that "since the case was remanded to the Office of Employee Appeals, [the Superior Court] no longer has jurisdiction of this matter." Stokes also contended that the facts relating to his indictment and conviction, although widely publicized and known to representatives of the District of Columbia, had not been presented to the OEA, and therefore could not properly be asserted before the reviewing court.

On September 25, 2000, the trial judge, in what we shall call Order No. 2, denied

---

**2.** *See* D.C.Code §§ 22–3811 & 3812(a) (1996).

**3.** *See* 18 U.S.C. § 201(b)(2)(C) (1994).

**4.** *See* D.C.Code § 22–712 (1996).

**1.** *See* 18 U.S.C. § 201(c)(1)(B) (1994).

the District's motion on jurisdictional grounds. She wrote, in pertinent part, as follows:

> [I]t appearing that this court is without jurisdiction to decide the instant motion, it is ... [o]rdered [that] the Motion for Relief from Judgment be, and the same hereby is denied.

The District has appealed from Order No. 2 and has asked this court to reverse the trial judge's decision and to hold that Stokes "is not entitled to any remedy" in his RIF action. We conclude, however, that the only issue properly before us is whether the trial judge erred in holding that she lacked jurisdiction over the District's motion. We hold that, because the Superior Court was acting in an appellate capacity, it had jurisdiction to decide whether its mandate should be recalled in the interests of justice.

### I.

Ronald L. Stokes became Chief of the Office of Taxicabs in 1987. During his tenure of that position, he allegedly sold taxicab drivers' licenses (hack faces) to unqualified persons in exchange for thousands of dollars in bribes. It was this conduct that led to his criminal convictions. On April 14, 1995, in a personnel action which was not predicated on his criminal activity, Stokes was separated from government service pursuant to a RIF. Stokes petitioned the OEA for reinstatement, back pay, and other benefits, contending that his separation was illegal.

On December 4, 1997, an Administrative Law Judge (ALJ) of the OEA found that Stokes' position was mandated by statute and not subject to abolition by RIF. The District asked the "full Board" of the OEA to review the ALJ's decision. On November 9, 1998, the Board issued a decision in which it sustained the ALJ's ruling that the RIF was unlawful, but limited the relief available to Stokes:

> Employee's entitlement to restoration to his position and back pay and benefits shall be deemed to have been terminated on April 9, 1997, the effective date of D.C. [Act] 11–360 [D.C. Law 11–198]. This law amended D.C.Code section 40–1712(a) by deleting the Office of Chief of Taxicabs as a mandatory statutory position.

Stokes appealed to the Superior Court pursuant to D.C.Code § 1–606.3(d) (1981), which provides that the Superior Court shall act as an appellate tribunal vis-à-vis decisions of the OEA.[5] On March 22, 2000, in Order No. 1, the trial judge sustained Stokes' appeal and reinstated the ALJ's decision, holding that the enactment in 1997 of the statute abolishing the Office of Chief of Taxicabs as a mandatory statutory position did not automatically reactivate the original invalid RIF, nor did it terminate Stokes' right to back pay and benefits. The judge reasoned that in order to separate Stokes from government service pursuant to a reduction in force, the District was obligated to start the process once again and to provide Stokes, *inter alia*, with a new notice of termination. As previously noted, the judge held that Stokes was entitled to full pay and benefits from April 15, 1995 to the present.[6] She

---

**5.** This provision, now codified as D.C.Code § 1–606.03(d) (2001), reads as follows:

> Any employee or agency may appeal the decision of the Office to the Superior Court of the District of Columbia for a review of the record and such Court may affirm, reverse, remove, or modify such decision, or take any other appropriate action the Court may deem necessary.

**6.** At oral argument before this court, Stokes' attorney advised that his client still had not received a valid termination notice and argued that the back pay owed to his client is continuing to accrue.

remanded the case to the OEA with directions to implement her order—a directive with which, as we have seen, the OEA complied on May 31, 2000.

On June 15, 2000, almost three months after Order No. 1 was issued, and fifteen days after the OEA issued its order implementing the trial judge's directive, the District filed a motion in the Superior Court for relief from judgment. This motion was the first submission in this case, either before the OEA or in the Superior Court, that contained any mention of Stokes' criminal convictions or misconduct in office. The motion was filed almost three years after Stokes' indictment in August 1997 and almost two and one-half years after Stokes' January 1998 conviction of crimes he had committed while in office. The District's remarkable delay in bringing these facts to the attention of the court or the agency was unapologetically explained as follows in counsel's memorandum in support of the District's motion:

> Undersigned counsel was not made aware of Petitioner's criminal activities until she saw his name mentioned in an article in *The City Paper* which stated that he was "nabbed in 1998" for crimes related to his position. Any failure of communication among the various agencies within the District regarding this matter certainly would be excusable given the magnitude of the consequences in this case and the overwhelming public policy that individuals convicted of abusing their public office should not benefit from such activities.

At the time that the District's motion for relief from judgment was filed, the case had already been remanded to the OEA and had been acted upon by that Office. Presumably for this reason,[7] the trial judge determined that she lacked jurisdic-tion over the motion, and she so held in Order No. 2. This timely appeal followed.

## II.

■ It is plain from the text of Order No. 2 that the trial judge denied the District's motion solely on jurisdictional grounds and not on the merits. The judge evidently believed that she lacked authority to consider the motion when the case had been remanded to the OEA and when the OEA had already acted upon the remand. In light of her belief that she was without jurisdiction, the judge did not (because she thought that she could not) exercise her discretion over the substantive questions presented by the District's motion, namely, whether the mandate should be recalled and the record remanded to the OEA for further fact-finding in light of Stokes' criminal activities and convictions. The threshold inquiry for this court-and our only appropriate inquiry at this stage of the proceeding-is whether the judge was correct in her conclusion that she was without jurisdiction to consider the District's motion.

■ Although the parties have treated the issue before us as being whether the trial judge abused her discretion in denying the District's motion, this analysis cannot be sustained. The judge's stated reason for her decision was that she lacked subject matter jurisdiction. The question whether the Superior Court has subject matter jurisdiction over a case "presents a narrow question of law, which we review *de novo.*" *Martin v. District of Columbia Courts,* 753 A.2d 987, 991 (D.C.2000) (footnote omitted). We therefore owe no deference to the trial court's jurisdictional ruling.

---

7. The judge did not issue an opinion on the jurisdictional issue, and so far as the appellate record shows, she provided no reasons for her order.

The District contends that the judge had jurisdiction to consider the District's motion under Super. Ct. Civ. R. 60(b)(6) and under the Superior Court's equitable powers. We do not reach the question whether Rule 60(b)(6), which authorizes the Superior Court under certain circumstances to relieve a party from a final judgment, order, or proceeding, applies to a situation, such as the one here presented, in which that court was acting in an appellate capacity rather than as a trial court.[8] We hold instead that because the Superior Court is invested by statute with the authority to act as an appellate tribunal vis-à-vis decisions of the OEA, that court has jurisdiction to decide whether to recall its mandate and whether to order that the administrative record be reopened.

■ In general, the "[i]ssuance of the mandate formally marks the end of appellate jurisdiction." *Johnson v. Bechtel Assocs. Prof'l Corp., et al.,* 255 U.S.App. D.C. 198, 201, 801 F.2d 412, 415 (1986). Nevertheless, an appellate tribunal has "an inherent power to recall a mandate upon a showing of good cause, as most persuasively expressed by the likelihood of injustice." *Dilley v. Alexander, et al.,* 200 U.S.App. D.C. 354, 357, 627 F.2d 407, 410 (1980) (citations omitted). "[T]he power to recall a mandate should be exercised sparingly, ... based upon exceptional circumstances, ... or a special reason." *Id.* (citations and internal quotation marks omitted). The authority to recall a mandate "exists as part of the court's power to protect the integrity of its own processes." *Zipfel v. Halliburton Co., et al.,* 861 F.2d 565, 567 (9th Cir.1988). An appellate tribunal retains this authority even after it has remanded the case to the agency whose decision it has reviewed. *Greater*

*Boston Television Corp. v. FCC,* 149 U.S.App. D.C. 322, 463 F.2d 268 (1971).

■ Among the recognized grounds for recalling a mandate is misconduct affecting the integrity of the judicial process. *Id.,* 149 U.S.App. D.C. at 332, 463 F.2d at 278. The "'deeprooted policy in favor of the repose of judgments' and the interest in finality, must yield ... where enforcement of the judgment is 'manifestly unconscionable.'" *Id.* (quoting *Hazel Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238, 244–5, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). As the court noted in *Greater Boston Television Corp., supra,* "[t]he spirit of the 'fraud on the court' rule is applicable whenever the integrity of the judicial process or functioning has been undercut-certainly in any instance of misconduct by a party." 149 U.S.App. D.C. at 332, 463 F.2d at 278. There can thus be no doubt that the power to recall the mandate exists in an appropriate case, although appellate courts should act with caution and restraint in exercising it. *See, generally,* CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3938, at 712–37 (2d ed.1996).

At this stage of the proceedings, it would be premature for this court to address the substantive questions whether the trial judge should exercise her power to recall the mandate and to order that the record before the OEA be reopened. On the one hand, and notwithstanding the unfortunate failure of representatives of the District to communicate with one another regarding Stokes' misconduct, the trial judge may well find it unconscionable for a public servant who has disgraced his office and betrayed his trust to continue to re-

---

**8.** Without deciding that question, we note that Rule 60(b) was obviously written with action by a trial court in mind. The parties have cited no precedent, and we know of none, in which the Rule was invoked by a court acting in an appellate capacity.

ceive his salary and other benefits at taxpayer expense. On the other hand, courts are understandably reluctant to reward or tolerate a delay of several years in bringing potentially dispositive facts to the attention of the tribunal charged with the responsibility of deciding the case. It is for the trial court, in the first instance, to determine, in the exercise of its sound discretion, whether recall of the mandate and further fact-finding by the OEA are substantively warranted. We hold only that the trial judge erred in concluding that she lacked jurisdiction to consider the District's motion. Accordingly, Order No. 2 is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*