**A.L. EASTMOND & SONS, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA CONTRACT APPEALS BOARD, Appellee.**

**No. 01–CV–342.**

District of Columbia Court of Appeals.

Argued March 19, 2002.

Decided April 4, 2002.

Michael E. Geltner, Washington, DC, with whom Joan Fagan Teich was on the brief, for appellant.

William J. Earl, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for the District of Columbia.

Before TERRY, FARRELL, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

This appeal is from an order of the Superior Court (Gardner, J.) dismissing for lack of subject matter jurisdiction a petition for review of a decision by the District of Columbia Contract Appeals Board (the CAB). Although the government contract in question had been awarded by the District of Columbia Financial Responsibility and Management Assistance Authority (the Authority), a congressionally-established agency with unique contracting powers, the CAB purported to exercise jurisdiction over a protest by appellant challenging the bid solicitation process (conducted by the District of Columbia Public Schools) that took place before the Authority intervened and awarded the contract. When the CAB denied the protest on the merits, appellant petitioned for review in the Superior Court, *see District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 14 (D.C.1993), resulting in the dismissal now appealed from.

We hold, in keeping with Judge Gardner's decision, that the governing statutes deprived the Superior Court of jurisdiction to review the denial of a challenge to a contract awarded by the Authority. We hold further that, once the Authority intervened and awarded the contract, the CAB likewise had no jurisdiction to entertain a protest challenging the bid solicitation that preceded the award.

I.

On May 27, 1998, the District of Columbia Public Schools Office of Acquisitions and Contracts (DCPS) issued an invitation for bids to obtain boilers and boiler installation services for various public schools. Three bids were submitted, the lowest by

appellant Eastmond. The contracting officer determined, however, that the bids submitted by Eastmond and another bidder were nonresponsive because each had failed to submit a bid bond along with the bid. Accordingly, an announcement was made that the third bidder, Kewanee, would be the boiler supplier under the solicitation. On July 15, 1998, Eastmond filed a protest with the CAB contending that the bid solicitation was ambiguous as to whether a bid bond, rather than a performance bond (apparently to be filed later), was required. The effect of the protest was to stay any award of the contract by DCPS. *See* D.C.Code § 2–309.08(c)(1) (2001). On July 17, 1998, however, the Authority replaced DCPS as the contracting authority and awarded the contract to Kewanee. In the ensuing protest litigation, the District argued that because the CAB's jurisdiction over bid protests derives from the District of Columbia Procurement Practices Act, and the Act is expressly inapplicable to the Authority, *see* D.C.Code § 2–301.04(a), the CAB lost jurisdiction to review the bid solicitation once the Authority made the award. The CAB, however, took the view that the Authority's award action had not been intended to affect the "solicitation and award protest[]" by Eastmond, but only subsequent "performance disputes" that might arise under the contract. Since the Authority had not purported to "tak[e] control over the procurement or eliminat[e] protest rights of bidders," the CAB concluded that

its "protest jurisdiction" over the bid solicitation and award was intact,[1] and so proceeded to the merits of the protest. The Superior Court, by contrast, agreed with the District's position and accordingly dismissed the petition for review.

## II.

 The CAB's conclusion that it retained jurisdiction over the solicitation and award protest despite the intervention of the Authority was error.[2] If sustained, it would mean that the CAB preserved jurisdiction to direct termination of a contract award by the Authority in the face of a statute, D.C.Code § 47–391.05(a) (2001), directing that any action against the Authority or arising out of the Act creating the Authority may be brought only in federal court. Moreover, it would conflict with the statute, D.C.Code § 2–301.04(a), which excludes the Authority from the reach of the District's procurement law and hence the jurisdiction of the Board. The trial court therefore correctly ruled that a challenge to the process resulting in a contract award by the Authority may be brought only in the United States District Court, not before the CAB and (on review) in the Superior Court.

In April 1995, in response to the District's financial crisis and perceived mismanagement by local government officials, Congress established the Authority, also popularly known as the Control Board, with broad powers of governance over the District.[3] *See* District of Columbia Finan-

---

1. *See* D.C.Code § 2–309.03(a)(1):

 The Board shall be the exclusive hearing tribunal for, and shall have jurisdiction to review and determine de novo ... [a]ny protest of a solicitation or award of a contract addressed to the Board by any actual or prospective bidder or offeror, or a contractor who is aggrieved in connection with the solicitation or award of the contract.

2. This court reviews questions regarding subject matter jurisdiction *de novo*. *See District of Columbia v. Stokes*, 785 A.2d 666, 670 (D.C.2001). Because of our holding, we do not reach the merits of Eastmond's challenge to DCPS's bid solicitation.

3. The Authority went out of existence by operation of law on September 30, 2001.

cial Responsibility and Management Assistance Act of 1995, Pub.L. No. 104–8, 109 Stat. 97 (codified at D.C.Code § 47–391.01 *et seq.*) (FRMAA); *see also Shook v. District of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 328 U.S.App. D.C. 74, 83, 132 F.3d 775, 784 (1998). A particular concern of Congress was recurrent problems in the operation of the public school system. *See* FRMAA § 2(a)(2) ("[T]he District of Columbia government fails to provide its citizens with effective ... services in areas such as education"). Through the Authority, Congress intended to "ensure the appropriate and efficient delivery of services [to District residents] and," among other things, to "moderniz[e the District's] budget, ... procurement, ... and management systems." FRMAA § 2(b)(4)(C)-(D).

One of the numerous powers given the Authority was to enter into contracts. *See* D.C.Code § 47–391.03(g) ("The Executive Director may enter into such contracts as the Executive Director considers appropriate (subject to the approval of the Chair) to carry out the Authority's responsibilities under this Act."). In 1996, Congress amended the FRMAA to provide the Authority with specific authority "to contract with a private entity (or entities) to carry out a program of school facility repair of public schools ... in consultation with the General Services Administration." *See* Omnibus Consolidated Appropriations Act of 1997 § 5201, Pub.L. No. 104–208, 110 Stat. 3009 (1996).[4] This contracting was to be "conducted in accordance with Federal procurement rules and regulations and guidelines or such guidelines as prescribed by the Authority." *Id.* That provision was

consistent with FRMAA § 102(c), codified at D.C.Code § 2–301.04(a), which expressly excludes the Authority from application of the District of Columbia's procurement statute.[5] Moreover, as pointed out above, challenges to such contracts could be brought only in federal court, because Congress provided (with an exception not here relevant) that "any action against the Authority or any action otherwise arising out of [FRMAA], in whole or in part, shall be brought in the United States District Court for the District of Columbia." D.C.Code § 47–391.05(a).

The CAB is a creature of, and derives its powers from, the District's procurement statute. *See* D.C.Code § 2–309.01; *Jones Artis Constr. Co. v. District of Columbia Contract Appeals Bd.*, 549 A.2d 315, 320 (D.C.1988). A disappointed bidder's right to pursue the administrative remedy of protest before the CAB derives from the same statute. D.C.Code § 2–309.08. It follows, therefore, that the CAB had no jurisdiction to review a contract or the process leading to a contract awarded by the Authority, which is not subject to the District's procurement code, and that Eastmond's challenge to the contract award could only be brought in federal court as the FRMAA provides.

The CAB's contrary conclusion that the Authority, in awarding the contract to Kewanee, "intended" to leave unaffected Eastmond's bid protest and the CAB's power to consider it is clearly erroneous. The terms of the award contain no indication that the Authority was not exercising its full power to supplant DCPS in the

---

4. The amendments further empowered the Authority to "issue such orders, rules, or regulations as it considers appropriate to carry out the purposes of the Act and the amendments made by this Act." Section 5203(f) (codified at D.C.Code § 47–392.07(d)(1)).

5. "[With enumerated exceptions], this chapter ["Procurement Practices for the District Government"] shall apply to all departments ... of the District government, ... but excluding the ... Authority." D.C.Code § 2–301.04(a).

award of the contract—effectively rendering the bid solicitation process moot.[6] Indeed, what the Authority "intended" or had in mind is beside the point; by operation of law its contract award fell outside the reach of the District's procurement statute and hence outside the Board's jurisdiction under § 2–309.03. Consequently, neither the CAB nor the Superior Court on review had jurisdiction to award the relief Eastmond demanded, which (as stated in its supplemental brief to the trial court) was to "direct ... the Authority or DCPS to terminate the contract with the high bidder for convenience, the traditional remedy when a public contract award is found to be invalid in a protest proceeding."

Eastmond nonetheless contends that "the DCPS disqualification decision is subject to D.C. law and review by this court even if the ultimate contract was an Authority contract, because the matters at issue have nothing to do with the Authority contract itself or any contracting issues involving the Authority" (Reply Br. at 3). Eastmond appears to argue that DCPS's disqualification of it and the only other bidder besides Kewanee amounted to a "sole source" contract award, see D.C.Code § 2–303.05, reviewable as such by the CAB despite the Authority's subsequent intervention. Beyond the fact, however, that Eastmond's bid protest precluded any award by DCPS until the protest was resolved, see D.C.Code § 2–309.08(c)(1), the answer to this argument has already been given: the correctness or not of DCPS's bid procurement was mooted by the Authority's action and, with it, the inability of the CAB to afford relief.[7] Eastmond's remedy, if any, is in federal court.

Eastmond's remaining argument designed to avoid the jurisdictional bar is that the Authority's award of the contract to Kewanee was *ultra vires,* the reason being that its grant of power to contract on behalf of DCPS allegedly expired in fiscal year 1997, before the 1998 award. But that contention, like any other question of whether the Authority exceeded its powers under the FRMAA, "aris[es] out of [the] Act," D.C.Code § 47–391.05(a), and so was beyond the Superior Court's jurisdiction to resolve.

*Affirmed.*

---

**6.** The CAB's bifurcation—distinguishing sharply between the contract award (by the Authority) and the bid solicitation (by DCPS) is also functionally artificial. As Eastmond concedes (Reply Br. at 2), "[B]id solicitation and formal award are normally interrelated ingredients in the creation of a public contract." *See generally* JOHN CIBINIC, JR. ET AL., ADMINISTRATION OF GOVERNMENT CONTRACTS 64 (3d ed.1995) (government is "bound" once it takes "the final step toward committing a contractual act").

**7.** Eastmond has never asked for bid preparation or bid protest costs based on DCPS's alleged arbitrary conduct of the solicitation process. *See* D.C.Code § 2–309.08(f)(2). We need not consider, therefore, whether the CAB would have had power to assess such costs against DCPS even though it could not disturb the contract award by the Authority.